## DONALD LEMOND

### V.

## BARBARA H. MCELROY

Record No. 891299

April 20, 1990

Present: All the Justices

*Guy W. Horsley, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General; K. Marshall Cook, Senior Assistant Attorney General; Gregory J. Haley, Assistant Attorney General; Michael A. Likavec, Assistant Attorney General*, on briefs), for appellant.

*Terence P. Ross (Gary M. Kramer; Gibson, Dunn & Crutcher*, on brief), for appellee.

*Amicus Curiae:* Virginia Press Association and Virginia Association of Broadcasters (Alexander Wellford; David C. Kohler; Christian, Barton, Epps, Brent & Chappell, on brief), for appellee.

JUSTICE COMPTON delivered the opinion of the Court.

This is a mandamus proceeding filed in the trial court under the Virginia Freedom of Information Act, Code §§ 2.1-340.1 through -346.1 (the Act). The only record provided on appeal is a letter from petitioner to certain public officials including the Attorney General of Virginia, a response of the Attorney General, the petition for a writ of mandamus, the transcript of a brief hearing at which no evidence was presented, and the order of the trial court awarding mandamus.

From this sparse record, the following facts can be ascertained. In April 1986, one Cassandra Jones was detained erroneously at the Alexandria, Virginia, courthouse by the local sheriff. Subse-

quently, Jones sued the Sheriff, and the case was settled. Pursuant to the settlement, a sum of money was paid Jones from public funds on behalf of the Sheriff. The settlement agreement was not filed among the court papers.

By letter dated September 19, 1989, in anticipation of a forthcoming Alexandria sheriff's election, Barbara H. McElroy, an Alexandria resident, made a request under the Act to Donald LeMond, Director, Division of Risk Management, Department of General Services, Commonwealth of Virginia. McElroy asked for the opportunity to inspect and copy the following documents:

"The settlement agreement entered into in the lawsuit brought by Ms. Cassandra Jones against the city of Alexandria and James Dunning, Sheriff, based on her erroneous detention at the Alexandria courthouse in April, 1986.

"Any documents, (including, but not limited to cancelled checks, ledgers, accounting records and financial statements), which reflect the amount of the settlement reached in the aforementioned lawsuit."

By letter dated September 21, 1989, the Attorney General responded to McElroy's request and stated that LeMond was the custodian of the documents sought. The Attorney General wrote, however, that the documents are exempt from the mandatory disclosure requirements of the Act pursuant to Code § 2.1-342(B)(6), and stated that the documents would not be released voluntarily.

The exemption in (B)(6) excludes from the Act's provisions the following documents, as pertinent to this case: "Memoranda, working papers and records compiled specifically for use in litigation. . . ."

On October 19, 1989, McElroy filed the instant petition for a writ of mandamus against LeMond in the court below asking that an order be issued against LeMond compelling him to permit her "to inspect and copy those documents described in Petitioner's September 19, 1989 letter." Filed with the petition for mandamus was a notice for a hearing to be held six days later.

LeMond filed no responsive pleading, but counsel for both parties appeared for the hearing on October 25, LeMond being represented by an assistant Attorney General. At the beginning of the hearing, McElroy's attorney stated that his client was "seeking to

determine the amount of taxpayers' money used in that settlement of that lawsuit." Following factual representations and argument by counsel, the trial court ruled from the bench and granted the petition. The order appealed from was entered on that day and directed LeMond to permit McElroy "to inspect and copy all records and documents requested in her letter of September 19, 1989 that are in his custody within three days from the date of this order." We awarded LeMond this appeal on October 27 and granted his motion to stay execution of the writ of mandamus pending appeal.

LeMond's assignment of error raises the question whether "the settlement agreement" and "implementing documents" are exempt pursuant to (B)(6) from the mandatory disclosure provision of the Act. But the parties do not agree completely on just what documents are in issue.

■ Unfortunately, neither party, nor the trial court, sought to have the documents produced for the court's *in camera* inspection in order to determine the precise nature of the records. On brief, the Attorney General states that LeMond is the custodian of the following records that pertain to McElroy's request:

"(1) a copy of the settlement agreement that resulted in the dismissal of the case styled *Cassandra Jones v. James Dunning, Sheriff*, (Case No. 870385-A), in the United States District Court for the Eastern District of Virginia, Alexandria Division; (2) a payment request made by LeMond's Division for the final settlement check to be drawn, showing the amount of the check and to whom the check is to be made payable; and (3) a computer sheet showing the amount paid as a result of the Cassandra Jones settlement."

At the bar of this Court, McElroy's counsel was asked whether the focus of our decision should be confined to the foregoing items. Counsel responded that the trial court's order, incorporating by reference the broad and limitless language of McElroy's letter request, should be affirmed. Counsel said, however, that McElroy "would rely on the Attorney General to be forthright in determining what documents met that order." Consequently, we apparently are confronted with basing our decision on a "settlement agreement," a payment request for a settlement check to be drawn, and a computer sheet showing the amount paid in the settlement.

The Attorney General argues that the plain language of the exemption excepts the documents in issue. Contending that a settlement agreement is prepared and entered into by litigants for a single purpose, to bring an end to pending litigation, the Attorney General says there is "quite simply, no nonlitigation purpose for preparing and executing a settlement agreement." The Attorney General argues that the exception for litigation records in (B)(6) "reflects the policy judgment of the General Assembly that public litigants should participate in the adversarial process on a level playing field with private litigants and conduct litigation in a businesslike manner, with the full range of options and flexibility that would be available to private litigants generally." According to the Attorney General, "The concept of 'litigation' embraces the entire adversarial process, from the investigatory phase through the final disposition of the case, which necessarily occurs either by adjudication or settlement."

Additionally, the Attorney General points to a formal Attorney General's opinion issued in November 1988, in the midst of a joint legislative study of the provisions of the Act. Addressing whether a confidential settlement agreement entered into by a public body is protected from disclosure by (B)(6), the opinion stated: "Although a settlement agreement is not compiled exclusively for use in litigation, it is my opinion that it is compiled specifically for use in litigation to resolve an existing dispute and to memorialize and evidence the terms of that resolution." 1987-88 Op. Att'y Gen. 35, 36. The Attorney General argues that the General Assembly presumably acquiesced in the opinion's conclusion with respect to the scope of the exclusion when it amended the Act during the 1989 Session and left (B)(6) undisturbed.

McElroy, supported by brief amicus curiae of the Virginia Press Association and the Virginia Association of Broadcasters, contends that the narrow construction of the exemption mandated by § 2.1-340.1 of the Act requires that the documents in issue be disclosed. LeMond asserts: "Settlement agreements . . . are not part of the litigation process. Rather, they are contracts between parties terminating a dispute, in effect, an alternative to litigation. This is particularly true where, as here, the settlement agreement is not filed with the court." Additionally, McElroy contends that the "accounting records reflecting payment of a settlement that are compiled in the ordinary course of business to record the expenditure of public funds are even further removed from the liti-

gation process and plainly not 'compiled specifically for use in litigation.' "

Also, McElroy notes, the Attorney General's opinion "addresses only settlement agreements and provides no support to LeMond for his withholding of the accounting records requested by McElroy." Saying that an Attorney General's opinion is not controlling authority, merely an aid in discerning legislative intent, McElroy contends that the language of (B)(6) is plain and unambiguous and that resorting to rules of statutory construction is unnecessary. Under the "plain meaning" rule, McElroy argues, the usual and ordinary use of the phrase "compiled specifically for use in litigation" means that settlement agreements not filed with a court and associated accounting records do not fall within that description.

Further, McElroy argues that even if it is appropriate to embark on an attempt to discern legislative intent, the November 1988 opinion provides no help. McElroy, attaching to her brief excerpts from minutes of the legislative subcommittee's meetings, contends that the study had been substantially completed before the opinion was issued. Thus, she says, the joint subcommittee did not consider the opinion during its deliberations.

■ First, we address the "settlement agreement" issue. Presented with persuasive arguments on both sides of this important question, we refuse to decide the issue in a vacuum, without any idea of the precise nature of the document with which we are dealing. We do not know whether we are ruling on a one-sentence writing, whether we are speaking to a boilerplate general release form, whether we are concerned with a detailed, multi-page settlement contract, or whether the document is some other kind of official record which includes recitals about the merit, or lack of same, of the controversy. The parties, by merely stipulating that a "settlement agreement" is involved, have done no more than ask us for an advisory opinion unsupported by any documentary record whatever. Routinely, confidential records are filed for *in camera* inspection by a trial court and, if necessary, by an appellate court. *See Commonwealth* v. *Edwards*, 235 Va. 499, 510-13, 370 S.E.2d 296, 302-04 (1988). At the very least, a precise description of the document that would not reveal its terms verbatim should be made a part of the record. At the trial level, it was incumbent upon the litigants to make an appellate record, if an appeal was

anticipated. This was not done, and that failure has prevented appellate review of the question.

■ This means, on the "settlement agreement" issue, that the trial court's ruling stands but without our approval. The ruling will not be reversed because the responsibility for presenting an adequate appellate record is upon the appellant who seeks reversal of the decision below.

■ Second, with regard to the accounting records, we likewise do not have these items for *in camera* inspection. But we do have a precise description of the items which are sought and which are being withheld: a payment request made by LeMond's Division for the final settlement check to be drawn, showing the amount of the check and to whom the check is to be made payable; and, a computer sheet showing the amount paid as a result of the Cassandra Jones settlement. Assuming, without deciding, that the "settlement agreement" is exempt from disclosure under (B)(6), we hold that these accounting records nevertheless must be produced for inspection and copying.

Even if we were to adopt the Attorney General's view that settlement is "one dimension of litigation," we conclude nonetheless that the accounting records in dispute are not documents "compiled specifically for use in litigation," construing the exemption narrowly according to its plain meaning. These are documents generated in connection with the payment process, after the mutual agreement to settle. The request for the settlement check was prepared to execute the settlement agreement, and the computer sheet recorded the expenditure of public funds.

For these reasons, the order of the trial court will be affirmed. The case will be remanded for an appropriate modification of the deadline for inspection and copying of the records and for service of the writ of mandamus upon LeMond.

*Affirmed and remanded.*