PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, Chafin, and Russell, JJ., and Millette, S.J.

MICHAEL POWELL

v.  Record No. 230410

OPINION BY
JUSTICE CLEO E. POWELL
JUNE 27, 2024

MELANIE KNOEPFLER-POWELL

FROM THE COURT OF APPEALS OF VIRGINIA

Michael Powell ("Mike") appeals the decision of the Court of Appeals affirming the judgment of the Fairfax County Circuit Court denying his motion to modify the custody arrangement between Mike and Melanie Knoepfler-Powell ("Melanie").

## I.  BACKGROUND

Mike and Melanie were married in 2009.  They had one child ("MP"), who was born in 2012.  In 2017, the parties divorced.  A property settlement agreement ("PSA") was incorporated into the final divorce decree.  The PSA awarded the parties joint legal custody of MP, with primary physical custody going to Melanie.  Mike was granted visitation on the second and fourth weekends of every month and the parties alternated visitation on the months that had five weekends.  Additionally, Mike had four weeks of visitation each summer, and the parties agreed to share or alternate visitation on holidays or other special occasions.

In 2021, Melanie moved to modify custody and visitation based on her intent to move to Alabama.  Mike objected to Melanie's motion and sought an injunction to prevent Melanie from relocating to Alabama with MP.  Mike also filed a cross-motion seeking primary physical custody if Melanie relocated to Alabama or, in the event that Melanie chose to stay in Virginia, Mike sought "more time" with MP.  He indicated that his employment situation had changed, which allowed him to have a more active role in raising MP.  In their respective motions, both

Mike and Melanie also requested "tie-breaking authority" with regard to MP's legal custody. Although Melanie's motion to allow her to move to Alabama with MP was withdrawn at some point prior to trial, the parties still proceeded on the remaining issues in the parties' motions.

Prior to trial, Melanie named MP as a potential witness. Mike objected, arguing that, because MP was only nine years old, it was not in her best interests to be involved in the trial due to the stress, confusion, uncertainty, "and possible feelings of guilt." After considering the matter, the trial court decided to allow MP to testify.

At trial, MP was introduced to the trial judge. While she was speaking with the judge, she stated that she had "brought a few notes." After some discussion between the parties and the judge, MP was sworn in as a witness. The judge then instructed MP that "[i]f you hear the word 'objection,' that's these lawyers' jobs. They are supposed to keep me in line, too. So please stop, and I will be alerted." The judge then told the parties, "[a]nd from counsel, I don't need to -- you can just say the word. If I need more, I will ask you for more."

After asking MP some preliminary questions, the judge asked about the notes that she had previously mentioned. In response, MP gave the notes to the judge. The judge then stated, "[j]ust so counsel know, I haven't decided whether I will consider this. Let me just review it, and then I will show it to you." Neither party raised any objections. The judge then told MP that he was going to "take a quick look at [the notes], and then I will give it back to you."

Immediately after informing her that he was going to look at the notes, the judge began asking MP questions about her dog. The judge proceeded to ask MP about a variety of topics, such as whether she felt that her father loves her (yes), whether there was anything her father could do to make her feel more comfortable at his house ("I don't know"), and what she does at her father's house ("play a lot of soccer," "some chess," and "sometimes we have game night").

2

When the judge asked MP about whether she had told Mike about "[s]ome of the things that [MP] had in the notes," MP responded that she had not. MP explained that she gets a little worried because "sometimes [Mike] doesn't really like other people's ideas." The judge then asked MP what she wanted "in terms of [her] living situation." MP stated, "[p]robably me living at mom's but, like, going to dad's when I want, and, like, come back whenever."

The trial court then allowed the parties to ask MP questions. Melanie's counsel asked MP about where she got the idea of writing down the notes. MP responded that she was not sure if she would be able to say everything and it would be easier to write everything down. When Mike's counsel asked MP how she would describe her father, MP stated that "[s]ometimes he doesn't really like to, like, consider other people's thoughts and, like, considerations." While MP was being cross-examined by Mike's counsel, the trial court returned the notes it had previously taken from MP.

When Mike's counsel finished cross-examining MP, the judge asked MP about her stuffed bear. MP described the stuffed bear as being her "favorite bear." The judge asked about the size of the stuffed bear, its location (at Melanie's house), and why MP did not bring it with her (Melanie forgot). The trial judge concluded its questioning of MP by telling her "[i]t would have been nice to see [the] Bear, but you say hi to [the] Bear when you get home from me, from the judge."

After MP finished testifying and had left the courtroom, the trial judge informed the parties that, while MP was testifying, his law clerk had made a photocopy of MP's notes. After telling the parties that a copy of the notes would be emailed to them, the trial court stated:

> I'm going to order this what I would like to do is we can argue as
> to what the Court may consider of this, but I would like to admit
> this as a demonstrative, because she did adopt some of this

3

testimony. And to the extent that some of it is not -- obviously, demonstrative means it has no evidentiary value in and of itself.

The trial court went on to state "any objection to it being admitted as a demonstrative, and we will argue as to what the Court may consider on the 9th[1] out of this exhibit." In response, the following exchange occurred:

Counsel for Melanie: No objection.

Counsel for Mike: Your Honor, I'm going to note my objection on the record, but --

Trial Court: Okay. And don't be deterred from that. You have to protect the record.

Counsel for Mike: Thank you.

Trial Court: So I will admit it as a demonstrative over objection, because it appears, you know, [MP] said the magic words that she kind of adopted what was in here, but parts of it -- but the exhibit, and I know -- you can explain it to your client -- in and of itself, it has no significance. It is just a demonstrative, and the -- we could argue as to what the Court can at all consider.

Counsel for Mike: Okay.

Trial Court: But I did look at it as kind of a guide to ask some questions, so we will make it available to you.

Additionally, the trial court ordered that the exhibit should be sealed, finding "that its disclosure to third parties would – or if it would be in a public record would be harmful to the child's health, mental health." As it is relevant to the present case, it is necessary to reveal a portion of the notes. However, "to the extent that this opinion mentions facts found in the sealed record, only those specific facts have been unsealed because they are relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Commonwealth v. Puckett*, 302 Va. 458, n.1 (2023).

---

[1] The next scheduled day for trial was February 9, 2022.

In her notes, MP wrote: "I know my Dad says I have fun th[e]re[,] I Do[.] But Dad scar[e]s me[.]" She also wrote more than once that "Dad [says] I am to[o] old to have [the Bear]." On another page, MP claimed that Mike called her "fat." Additionally, MP stated that Mike "Does not care about" her dog and that he "Does not tak[e] him to the vet when he gets hurt."

On the next trial date, there was no further discussion about admitting MP's notes as a demonstrative exhibit.

Mike was subsequently called as a witness. During his testimony, he stated that his relationship "is absolutely not what is in those notes." However, he did not go into any further detail regarding what portion of the notes he was referring to.[2] At another point during his testimony, Mike addressed a statement in MP's notes that he does not care about her dog and would not take the dog to the vet. According to Mike, MP was referencing a specific event when Melanie had scheduled a vet appointment on his weekend with MP without coordinating with him. Mike claimed that he could not take the dog to the vet because they had conflicting plans, and MP simply misinterpreted the situation.

In response, the trial court asked:

> What about -- assuming you're -- for the sake of argument, you're kind and appropriate with the child when she's with you, what about this perception of the child or stated perception, let's say that, you know, Dad scares her? What do you make of that?

Mike responded by stating that he had "no idea where she gets that." The following exchange then occurred:

---

[2] Mike was also asked about another statement in MP's notes that addressed MP's thoughts about another individual. Mike's counsel objected, arguing that the question "assumes facts not before the witness." Opposing counsel indicated it was in MP's notes and the trial court overruled the objection. It should be noted that, although the statement does appear in MP's notes, it was not addressed by MP's testimony.

5

Trial Court:     What about this thing about [the] Bear?

Mike:            That's her stuffed animal.

Trial Court:     Right. Did you tell -- and I'm not saying that this would be inappropriate to tell her, but did you question why she still had [the] Bear at almost age 10?

Mike:            That's exactly what I did. I just asked her -- I said, "Oh; you're -- you know, you're 9 years old. You -- you still have [the] Bear." Or not that "you still have [the] Bear," but "you're still so clingy with [the] Bear."

Trial Court:     And when you said that, was there any -- without telling us what she said, was there any visible reaction from her? Or anything that would -- well, any visible reaction from her?

Mike:            I think her -- her reaction was just something she just -- she just likes having [the] Bear.

At the conclusion of the evidence, the parties gave their closing arguments. Notably, they agreed that Mike's change in employment amounted to a material change in circumstances since the original custody agreement. However, the parties disagreed on whether Mike should get more time with MP.

After hearing all of the evidence and the parties' arguments, the trial court considered the factors enumerated under Code § 20-124.3 to determine what was in the best interests of the child. The trial court noted that Melanie had been MP's primary caregiver and, therefore, she had "a greater ability to accurately assess and meet the emotional, intellectual, and physical needs of the child." At the same time, however, it found that Mike "is not doing anything objectively that is particularly wrong."

The trial court then turned to what it referred to as the "subjective point of view of the child." The trial court interpreted MP's testimony as her saying that Mike was "going a little fast" with regard to their relationship and it was affecting her "pillars of stability." According to

the trial court, MP had three pillars of stability: her mother, her dog, and her stuffed bear. In discussing those pillars, the trial court used specific quotes from MP's notes to support its findings, some of which could be inferred from MP's testimony, others which were only found in the notes. With regard to the stuffed bear, the trial court found that, to MP, the stuffed bear was "a very important security blanket."

After discussing the "pillars of stability," at great length, the trial court discussed the contents of MP's notes. Specifically, the trial court pointed to the portion of the notes where MP says "'I know my dad says I have fun there,' but, you know, she goes on to say, you know, that she's scared by Dad." After considering all the evidence and the statutory factors, the trial court concluded modifying visitation at this point would be "damaging" to MP.

Following the trial court's ruling from the bench, Mike filed a motion to reconsider. In his motion, Mike specifically argued that the trial court's decision "incorrectly relies on the contents of [MP's] notes." His motion pointed out that the trial court "repeatedly referred to language in [MP's notes] that MP did *not* discuss while testifying." (Emphasis in original.) After a hearing on the matter, the trial court took the matter under advisement. In a subsequent letter opinion, the trial court tacitly denied Mike's motion for reconsideration. It further denied Mike's motion to modify custody and visitation and awarded Melanie "final decision-making authority regarding all decisions about the child's care which are medical in nature."

Mike appealed the trial court's ruling to the Court of Appeals. On appeal, Mike argued, among other things, that the trial court erred when it reviewed MP's notes while she testified, admitted the notes as a demonstrative exhibit, and relied on them in reaching its decision. *Powell v. Knoepfler-Powell*, No. 0853-22-4, 2023 Va. App. LEXIS 309, at *27 (Ct. App. May 16, 2023). In an unpublished opinion, the Court of Appeals affirmed the decision of the trial

7

court. *Id.* at *31. The Court of Appeals determined that Mike failed to sufficiently preserve for appeal any challenges to the trial court's review of MP's notes or the admission of the notes as a demonstrative exhibit. *Id.* at *29-30. With regard to the trial court's reliance on MP's notes, the Court of Appeals ruled that the record indicated that Mike had introduced the issues that the trial court relied upon when he stated that he found them "upsetting." *Id.* at *31. The Court of Appeals also determined that the trial court's ruling was not actually based on MP's notes, "but on testimony contained in the record." *Id.* at *32.

Mike appeals.

## II. ANALYSIS

On appeal, Mike raises the same arguments that he raised in the Court of Appeals. Specifically, he argues that the trial court erred by reviewing MP's notes while she testified, admitting the notes as a demonstrative exhibit, and relying on MP's notes in determining whether it was in MP's best interests to modify the custody arrangement. Mike further takes the position that the Court of Appeals erred when it determined that he failed to preserve any objection to the trial court's review of MP's notes or its admission of the notes.

### A. Preservation

"On appeal, we are in the same position as the Court of Appeals to review the record." *Commonwealth v. Bass*, 292 Va. 19, 27 (2016). Therefore, we conduct a de novo review of the Court of Appeals' preservation determinations. *Id.*

Mike insists that he is not barred from challenging the trial court's decision to review MP's notes because the parties were unaware that the trial court was reviewing the notes until it was too late to raise a contemporaneous objection. The record, however, belies this assertion. As MP was testifying, the trial court observed that she had brought some notes with her. After

8

looking at the notes, the trial court explicitly addressed the parties, stating "I haven't decided whether I will consider this. *Let me just review it*, and then I will show it to you." (Emphasis added.) Neither party voiced any opposition to the trial court's actions. Similarly, when it was apparent that the trial court was relying on the notes as a guide for its questioning of MP, no objections were raised. Having failed to raise any objection, Mike has waived any argument regarding the trial court's review of MP's notes. *See* Rule 5:25.

With regard to the trial court's decision to admit MP's notes as a demonstrative exhibit, the record establishes that Mike did expressly object to the trial court's decision to admit MP's notes as a demonstrative exhibit, but he never offered a basis for his objection. Rule 5:25 "'requires that an objection be made with sufficient specificity to enable the trial judge to rule intelligently and, thus, to avoid unnecessary reversals on appeal.'" *Townsend v. Commonwealth*, 270 Va. 325, 332 (2005) (quoting *Commonwealth v. Washington*, 263 Va. 298, 309 (2002) (Koontz, J., dissenting)). In the absence of the requisite specificity, the issue is generally deemed waived. *Id.*

Mike, however, claims that he was following the trial court's instructions when he simply objected to the admission of MP's notes with nothing more. Indeed, the trial court had specifically instructed the parties to "just say the word [objection] . . . [i]f I need more, I will ask you for more." Although it appears that this instruction was given for MP's benefit – i.e., as a means of avoiding any further discomfort while she testified – it also created a situation where the parties were seemingly limited in their ability to fully specify the basis for their objections.

Given the context in which the objection was raised, it is possible to infer a basis for Mike's objection. Notably, it is undisputed that the notes contained hearsay and only certain portions of the notes were corroborated by MP's testimony. At the same time, however, we

9

cannot know for certain if Mike intended to rely on one of these rationales, or perhaps a different rationale entirely, as a basis for his objection. While we recognize that, under these specific circumstances, reasonable minds could differ as to whether this issue was sufficiently preserved, we note that it is "incumbent upon the litigants to make an appellate record," especially when the possibility of an appeal is anticipated, *LeMond v. McElroy*, 239 Va. 515, 520-21 (1990). Accordingly, we will assume without deciding that Mike failed to preserve this issue for appeal.[3]

In contrast with the trial court's review of MP's notes or its decision to admit them as a demonstrative exhibit, the issue of whether the trial court improperly relied on MP's notes was sufficiently preserved for appeal. In his motion to reconsider, Mike specifically argued that the trial court "incorrectly relie[d] on the contents of [MP's notes]" even though the trial court characterized the notes as having no evidentiary significance. In raising this argument, Mike also included a basis for his objection and included citations to the transcript indicating where the trial court made statements indicating that it had improperly relied on the contents of MP's notes. The trial court, in a subsequent letter opinion, acknowledged that it considered Mike's motion to reconsider. The trial court's decision not to revisit its ruling, however, necessarily implies that it had rejected Mike's objection. Accordingly, the issue of whether the trial court improperly relied on MP's notes was not waived and is properly before the Court.

---

[3] It is worth noting that our decision on this issue has no bearing on the outcome of this appeal. As discussed in detail below, the dispositive issue in this case involves the trial court's reliance on the notes. If Mike's objection to the admission of the notes was deemed preserved and we subsequently determined that the trial court's decision was erroneous, it would require us to review that decision "under the standard for non-constitutional harmless error provided in Code § 8.01-678." *Haas v. Commonwealth*, 299 Va. 465, 467 (2021). In other words, our analysis would look to whether, if and how the trial court used the notes – i.e., the trial court's reliance on the notes – to determine if the decision to admit the notes was harmless. Thus, our analysis would be functionally the same.

10

B. Reliance on MP's Notes

With regard to the trial court's reliance on MP's notes, Mike argues that the trial court erred by using uncorroborated portions of the notes as substantive evidence. Specifically, he points to the trial court's finding that MP felt scared of him. Mike notes that there was no substantive evidence offered to support this finding. According to Mike, the only mention of MP's fear of him is in the notes. Mike also relies on the trial court's references to MP's stuffed bear as further demonstrating the trial court's improper reliance on the notes. Melanie appears to acknowledge that the trial court treated the notes as substantive evidence, but she insists that it did so in a "misguided attempt to be kind and educational at the same time" by using evidence derived from the notes to "explain the ruling allegorically."

"In determining custody, the court shall give primary consideration to the best interests of the child." Code § 20-124.2(B). When deciding whether a custody arrangement is in the best interests of a child, courts are required to consider the factors enumerated in Code § 20-124.3. Although it is required to consider the enumerated factors, a court retains "broad discretion in determining what promotes the [child's] best interests." *Brown v. Brown*, 30 Va. App. 532, 538 (1999). Therefore, in reviewing a custody determination, we apply an abuse of discretion standard.

As this Court has repeatedly admonished, there are

> "three principal ways" by which a court abuses its discretion: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Lawlor v. Commonwealth*, 285 Va. 187, 263 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).

11

Here, Mike is claiming that the trial court abused its discretion by giving significant weight to an improper factor: the uncorroborated statements in MP's notes. Therefore, the evidentiary nature of MP's notes is dispositive. When the trial court admitted the notes into evidence, it did so in a very limited fashion: as a demonstrative exhibit. This designation is important because a demonstrative exhibit has no independent probative value. *See Anderson v. Anderson*, 29 Va. App. 673 (1999). Such exhibits are meant to explain or clarify other substantive evidence. *Id.*

Tellingly, when the trial court admitted MP's notes into evidence as a demonstrative exhibit, it explicitly stated that the exhibit "has no evidentiary value in and of itself;" its value is limited to only those "parts of it" that she adopted through her testimony. Taken as a whole, because they are a demonstrative exhibit, the evidentiary value of MP's notes is inextricably linked to the corresponding testimonial evidence that they were meant to illustrate. In other words, anything in MP's booklet that is not corroborated by testimonial evidence has no evidentiary value and, therefore, should not have been considered by the trial court. *See State Farm Mut. Auto. Ins. Co. v. Powell*, 227 Va. 492, 497 (1984) (recognizing that a trial court cannot sua sponte consider personal or extrajudicial evidence as a means of supplementing the record).

The record in the present case clearly establishes that the trial court improperly relied on uncorroborated portions of MP's notes when it decided not to modify the custody arrangement. In explaining its conclusion, the trial court appears to have given significant weight to what it described as the "three pillars" that underlie MP's stability. According to the trial court, the first pillar is her mother, the second is MP's dog, and the third is her stuffed bear. A review of MP's notes confirms that these are the things that she mentions as being most important to her.

12

Although MP's love for her mother and her dog were the subject of extensive testimony from which the trial court could easily discern the importance of those two "pillars," the same cannot be said about her stuffed bear. Indeed, MP's stuffed bear was only mentioned twice at trial and neither instance can be interpreted as establishing it as a "pillar" of MP's stability.

During MP's testimony, the trial court asked about the stuffed bear.[4] MP described the stuffed bear as her "favorite bear," but that was the extent of any substantive discussion of the stuffed bear by MP. The other mention of the stuffed bear occurred during Mike's testimony, when the trial court asked him if he had asked MP "why she still has [the stuffed bear] at almost age 10?"[5] After Mike confirmed he had asked MP that, the trial court inquired whether MP had any reaction to his question, to which Mike responded that MP "just likes having [the] Bear." Nothing in either exchange could be characterized as establishing the stuffed bear as a pillar of MP's stability.

It is further worth noting that, throughout the explanation of its ruling, the trial court repeatedly used quotations from MP's notes to support its various findings. While MP's feelings about various topics expressed in her notes can be inferred from MP's testimony, those generalized feelings do not permit the trial court to use her notes to address matters that she never testified about. For example, MP testified that she was "very close" to her dog, that she writes his name "on everything," and when she's feeling sad, her dog helps her "get through it." Most importantly, she never testified about the incident where Mike refused to take the dog to

---

[4] The stuffed bear had not been mentioned previously and it appears that the trial court learned of the stuffed bear's existence through its review of MP's notes.

[5] There had been no prior testimony indicating Mike had made such a statement to MP. Again, the only logical source for the trial court's question was MP's booklet.

the vet. The trial court, however, found that MP viewed that incident as demonstrating that Mike "does not care about anyone but himself." To reach this conclusion, the trial court pointed to portions of MP's notes where she stated that her dog "is everything to me so that just [melts] my h[e]art and [Mike] knows that [b]ut he does not care [about] anyone els[e] [b]ut himself." Thus, notwithstanding the fact that MP never testified about the vet incident, the trial court used the uncorroborated statements in her notes to make a finding about how MP viewed the situation.[6]

A more obvious example of the trial court improperly using MP's notes occurred when the trial court determined that MP said "that she's scared by [Mike]." The record unequivocally establishes that MP never testified that she was scared of Mike. Further, there is nothing in the record indicating that MP or any other witness even implied that she was scared of Mike.[7] The only place where such a statement exists is in MP's notes. Given that the trial court described the portion of MP's notes that was not corroborated as having "no evidentiary value in and of itself," its subsequent reliance on the uncorroborated portions of the notes was clear error.

Moreover, the Court cannot overlook the gravity of the trial court's improper finding. By finding that MP was scared of Mike, the trial court essentially created a ripple effect that could continue to resonate throughout any future custody proceedings. This is because the party seeking to modify a custody order bears the burden of proving that circumstances have changed since the last proceeding and that a change in custody is warranted to promote the best interests

---

[6] Mike's testimony on the subject only established that the vet incident occurred and that MP stated that he does not take care of the dog; neither he, nor any other witness, addressed MP's feelings on the matter.

[7] At one point, the trial court did ask Mike "what about this perception of the child -- or stated perception, let's say -- that, you know, Dad scares her? What do you make of that?" Mike responded that he had "no idea where she gets that." Such testimony could hardly be considered corroborative of the statements in MP's notes.

of the child. *See Keel v. Keel*, 225 Va. 606, 611 (1983). Therefore, any future action by Mike seeking to change the custody arrangement would require him to address this finding, regardless of the fact that it was not based on any substantive evidence. Obviously, an improper finding placing a party in such an untenable position simply cannot stand. Accordingly, we hold that the trial court abused its discretion in basing a significant portion of its decision on a demonstrative exhibit that was uncorroborated by substantive evidence.

## III. CONCLUSION

The trial court erred by relying on the uncorroborated portions of MP's notes in determining whether it was in MP's best interests to modify the custody arrangement. Accordingly, we will reverse the portion of the Court of Appeals decision that affirmed the judgment of the trial court and remand the matter to the Court of Appeals with instructions to remand the case to the trial court for reconsideration in light of our decision. Additionally, as noted in the Court of Appeals' opinion, the trial court should also address the clerical errors in the child and custody support order regarding Melanie's residential address and Mike's work telephone number.

*Affirmed in part,*
*reversed in part,*
*and remanded.*