# COURT OF APPEALS OF VIRGINIA

## Record No. 1398-24-2

LEE BHM CORP., d/b/a
CHARLOTTESVILLE DAILY PROGRESS, ET AL.

v.

THE RECTOR AND BOARD OF VISITORS OF
THE UNIVERSITY OF VIRGINIA, ET AL.

Present: Judges Beales, Ortiz and Chaney

Argued at Richmond, Virginia

Opinion Issued June 9, 2026[*]

### FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Melvin R. Hughes, Judge Designate

Brett A. Spain (Bethany J. Fogerty; Wilcox & Savage, P.C., on briefs), for appellants.

Jackie L. White; Farnaz Farkish Thompson (Maricris L.R. Prendingue; Laura J. Cooley; Evan X. Tucker; McGuireWoods LLP, on briefs), for appellee The Rector and Board of Visitors of the University of Virginia.

### MEMORANDUM OPINION BY
### JUDGE VERNIDA R. CHANEY

Lee BHM Corp., publisher of *The Daily Progress*, and Jason Armesto, a reporter for *The Daily Progress* (collectively, "BHM"), appeal the circuit court's order denying its petition for writ of mandamus under the Virginia Freedom of Information Act ("VFOIA"). BHM sought disclosure of two investigative reports prepared at the request of the University of Virginia ("UVA") following a November 2022 shooting that occurred on UVA's campus. UVA cross-appeals to what it characterizes as the circuit court's ruling that UVA failed to prove the work-product and scholastic-record exemptions.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

After BHM and UVA completed their presentation of evidence at trial, the Commonwealth's Attorney for Albemarle County intervened and asserted, for the first time, that the reports were exempt as criminal investigative files under Code § 2.2-3706.1. That intervention changed the posture of the case: UVA had defended its denial of BHM's VFOIA request based on the attorney-client, work-product, and scholastic-record exemptions. However, the circuit court denied BHM's petition "for the reasons stated on the record" at the hearing where the court ruled that the Commonwealth's later-raised criminal-investigative-files exemption applied. The transcript suggests that the criminal-investigative-files exemption supplied the basis for that ruling, but it does not clearly establish whether the court also adjudicated UVA's asserted exemptions.

Since the Commonwealth now withdraws the criminal-investigative-files exemption as a ground for withholding the reports, and UVA has released redacted versions of the reports, these later developments raise a potential mootness question. However, whether BHM "substantially prevail[ed]" under Code § 2.2-3713(D), and whether any issue remains live, may depend on whether the circuit court adjudicated UVA's asserted exemptions and whether sufficient factual findings support those rulings. This record does not provide enough detail to establish whether or how the circuit court adjudicated UVA's asserted attorney-client, work-product, and scholastic-record exemptions. This Court thus cannot resolve mootness, determine whether BHM substantially prevailed, assess the effect of the redacted production, or resolve UVA's cross appeal. Accordingly, we remand for further proceedings consistent with this opinion.

BACKGROUND

Following the November 2022 shooting of five students by a fellow student on campus, UVA requested that the Office of the Attorney General appoint outside special counsel "to conduct an independent review of the University's response to the shooting, as well as the

- 2 -

efforts the University undertook in the period before the tragedy to assess the potential threat [that the shooter] posed to [the] community." R. 1557-61, 2192-94. OAG retained outside counsel to prepare reports on UVA's behalf, and OAG transmitted the completed reports to UVA in October 2023. R. 2507-12, 2513-16, 2524-27. BHM then sent UVA two VFOIA requests seeking the reports. R. 68, 77. UVA declined both requests. R. 68, 77. On February 6, 2024, BHM filed a petition for writ of mandamus under VFOIA to compel disclosure under the initial request. R. 1-79.

The circuit court held a bench trial at which UVA argued that the reports were exempt from disclosure as attorney-client privileged materials, Code § 2.2-3705.1(2), attorney work product, Code § 2.2-3705.1(3), and scholastic records, Code § 2.2-3705.4(A)(1). R. 1342-43, 1423-926. UVA identified those exemptions as the ones at issue in defending its denial of BHM's petition. R. 1507, 1509.

When BHM attempted to introduce evidence of UVA's response to a different VFOIA request, UVA objected that whether its asserted exemptions there, including the criminal-investigative-files exemption, were later abandoned, was irrelevant. R. 1607, 1615. BHM requested that the reports and certain threat-assessment records created by UVA related to the shooter be filed publicly or, in the alternative, made part of the record under seal. R. 425-30, 1348-52, 1446-56, 1477, 1649-55. The circuit court took that request under advisement and received the documents for in camera review. R. 1348-52, 1477-78, 1649-55.

At the close of the first day of trial, BHM and UVA completed their presentation of the evidence, and the court set a second day for closing arguments. R. 1813-20. Before the second day, and after the close of evidence, the Commonwealth's Attorney for Albemarle County moved to intervene and requested an injunction prohibiting release of the reports. R. 464-532, 1294-95. The Commonwealth asserted that the reports were exempt from disclosure as criminal

investigative files under Code § 2.2-3706.1. R. 473-75, 1296-1323. The Commonwealth then asked the court to consider "whether release of the reports may affect the criminal prosecution" because "[t]he criminal process should be permitted to play out, allowing jurors to receive only the evidence collected by the state through its criminal investigation, and deemed admissible by the Court, and to reach their own conclusions without any potential impact of being aware of the conclusions drawn by the special counsel." R. 475. BHM objected, arguing that UVA had not put forth evidence on the criminal-investigative-files exemption and was not relying on that exemption. R. 1323-25, 1340, 1400-05, 1411. On June 25, 2024, the circuit court heard the Commonwealth's motion to intervene and took the matter under advisement. R. 1377.

At the July 18, 2024 hearing, the court granted the Commonwealth's motion to intervene. R. 613, 1394-95. The court explained that it was "more directly concerned with the operation of [VFOIA] as outlined by the General Assembly" than with the criminal defendant's fair-trial rights, because "the criminal case [was] not before" the court. R. 1395. The Commonwealth did not submit evidence, but the court heard the evidence that the Commonwealth would have offered. R. 1396-97. The court then ruled that the criminal-investigative-files exemption applied, explaining that it could not "get away from the fact that [the Commonwealth's] exemption applies because there's a criminal investigation that's involved in the case." R. 1405-06. The court added that "if the [Commonwealth] comes in here, as [it] has, and says this is part of a criminal investigation effort and that information is derived from the efforts by the respondents to investigate this matter, that's very telling to me." R. 1405-06.

The court denied BHM's petition and found that BHM had not substantially prevailed and denied its request for attorney fees. R. 620-21, 1395. The written order states that "the Court denies the Petition for Writ of Mandamus for the reasons stated on the record at the July

18, 2024, hearing." R. 620. Having denied BHM's petition, the court declined to rule on the Commonwealth's request for an injunction. R. 613.

At the July 18, 2024 hearing, the circuit court also addressed UVA's asserted exemptions in the context of its ruling on the criminal-investigative-files exemption. The court stated: "the overriding concern I have is this criminal investigative thing," and explained that, "to me, this question of the criminal records kind of overtakes all that." R. 1409-10. BHM then asked: "Are you saying that UVa has not proven its exemptions for attorney/client privilege, work product, and scholastic records, but the Court is ruling that these are criminal investigative files? Is that what the Court's ruling is?" R. 1410. The court answered this compound question with "Yes." R. 1410. BHM then asked: "Is the Court ruling that these are criminal investigative files of the [Commonwealth], and that's the basis upon which the Court is denying the petition?" The court answered: "Correct." R. 1410. The court also ruled that the reports and threat-assessment records would not be filed publicly or under seal and would be part of the record for appeal only for in camera review. R. 620-21.

BHM appealed, challenging the court's grant of the Commonwealth's intervention, denial of BHM's petition, treatment of the reports and threat-assessment records for purposes of sealing and appellate review, failure to consider redaction, and denial of attorney fees. UVA cross-appealed, assigning error to the court's ruling that UVA failed to prove the work-product and scholastic-record exemptions.

While this appeal was pending, the Commonwealth notified the circuit court that it was withdrawing its objection to the release of the reports. R. Add. 1-2. The Commonwealth explained that it had objected to release because the shooter's jury trial had been scheduled for January 2025, and thus any release could impair the shooter's right to a fair trial. R. Add. 1-2. The shooter later entered guilty pleas in November 2024 and was sentenced in November 2025.

R. Add. 2. The Commonwealth therefore stated that it "no longer believes that the release of the [r]eports would deprive [the defendant] of his right to a fair trial." R. Add. 2. After BHM filed its opening brief, UVA released redacted versions of the reports to the public, and BHM does not concede that the redactions were proper.

ANALYSIS

Before reaching the merits, we first consider mootness because it implicates our authority to decide the appeal. The Supreme Court of Virginia has held that when "there is no actual controversy between the litigants" or if a controversy once existed but has ceased, "it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case." *E.C. v. Va. Dep't of Juv. Just.*, 283 Va. 522, 530 (2012) (quoting *Franklin v. Peers*, 95 Va. 602, 603 (1898)). "A question is moot when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Millspaugh v. Commonwealth*, 85 Va. App. 654, 660 (2025) (quoting *Bd. of Supervisors v. Ratcliff*, 298 Va. 622, 622 (2020)).

In this case, the Commonwealth has withdrawn its objection to release of the reports, and UVA has released redacted versions of the reports to the public. Those developments raise a substantial mootness question because the circuit court denied BHM's petition on the ground that the reports were exempt as criminal investigative files, and the Commonwealth no longer asserts that basis for withholding the reports. R. Add. 1-2. The timing of the Commonwealth's intervention matters because the criminal-investigative-files exemption entered the case only after BHM and UVA had completed their evidentiary presentations on UVA's asserted attorney-client, work-product, and scholastic-record exemptions. R. 473-75, 1296-1323, 1343, 1423-926, 1507, 1509, 1813-20.

- 6 -

UVA's later redacted release does not eliminate the need for a mootness inquiry because UVA released only redacted versions of the reports, and BHM does not concede that the redactions were proper. Thus, UVA's redacted release may narrow the controversy, but it does not by itself establish that all issues concerning disclosure, redactions, or attorney fees are moot. Whether any dispute over redaction remains may depend on whether the redacted materials correspond to exemptions the circuit court actually adjudicated and supported with adequate factual findings.

Therefore, in some circumstances, later release of requested records does not resolve the mootness inquiry under VFOIA because a court may still need to determine whether the petitioner "substantially prevail[ed]" on the merits. Code § 2.2-3713(D). After the Commonwealth withdrew its objection, the unclear status of UVA's asserted exemptions bears directly on whether BHM "substantially prevail[ed]" for purposes of attorney fees.[1] On this record, we cannot determine whether the appeal should be dismissed as moot, whether any dispute remains concerning UVA's redactions, or whether the court made findings sufficient to permit meaningful review of whether BHM substantially prevailed. Deciding mootness on this record would require us to either assume that the circuit court rejected UVA's exemptions or that

_____

[1] We do not hold that BHM substantially prevailed merely because UVA later released redacted versions of the reports. *See Town of S. Hill v. Hawkins*, 82 Va. App. 801, 815 (2024) (explaining that to "substantially prevail," a litigant "need not have achieved all of his or her objectives in the litigation, but rather, must have been successful regarding the main object of his or her suit" (quoting *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 215 (2023))). Nor do we hold that the later production of redacted reports necessarily preserves a live attorney fees controversy.

The point is narrower: because the criminal-investigative-files exemption was raised only after BHM and UVA completed their presentation of the evidence, and because the Commonwealth has since withdrawn its objection, the unclear status of UVA's asserted exemptions may bear on whether BHM substantially prevailed, whether any issue remains live, and what effect, if any, UVA's later redacted production has on the merits. On the present record, however, this Court cannot resolve that issue without clarification of whether the circuit court ruled on UVA's asserted exemptions and, if so, on what basis.

it did not reach them. Either assumption would require us to speculate about the circuit court's ruling on UVA's asserted exemptions and would risk issuing an advisory opinion on a record that does not clearly disclose the basis for the judgment.

BHM requested attorney fees in the circuit court, and the court denied that request after finding that BHM had not "substantially prevail[ed]." R. 621. Under VFOIA, "[a] single instance of denial of the rights and privileges conferred by this chapter shall be sufficient to invoke the remedies granted herein." Code § 2.2-3713(D). VFOIA further provides that a petitioner "shall be entitled to recover reasonable costs, including costs and reasonable fees for expert witnesses, and attorney fees from the public body if the petitioner substantially prevails on the merits of the case, unless special circumstances would make an award unjust." *Id.* We cannot determine on this record whether the circuit court made findings sufficient to permit meaningful review of whether BHM substantially prevailed.

Since we are unable to determine whether BHM substantially prevailed or whether the circuit court ruled on UVA's asserted exemptions on this record, remand is necessary. BHM contends, in part, that it substantially prevailed because the circuit court appeared to find that UVA failed to prove its asserted attorney-client, work-product, and scholastic-record exemptions. UVA, in turn, cross appeals what it characterizes as the court's ruling that UVA failed to prove the work-product and scholastic-record exemptions.[2] However, the record also suggests that the circuit court may have denied the petition solely because it found that the criminal-investigative-files exemption applied. The court stated, "this question of the criminal

---

[2] UVA's cross-appeal on the work-product and scholastic-record exemptions suggests that UVA understands the circuit court to have ruled on those exemptions. However, that does not resolve whether the circuit court's ruling is sufficiently clear, or whether the record is sufficiently developed, to permit meaningful appellate review. *Cf., e.g., Shifflett v. Hill*, 82 Va. App. 367, 375 n.10 (2024) ("[A] concession of law is not binding on [this] court[.]" (first alteration in original) (quoting *Commonwealth v. Holman*, 303 Va. 62, 75 (2024))).

records kind of overtakes all that," and confirmed that the criminal investigative files ruling was "the basis upon which the Court is denying the petition." R. 1409-10. Yet, the court answered "Yes" when asked the following compound question:

> Are you saying that UVa has not proven its exemptions for attorney/client privilege, work product, and scholastic records, but the Court is ruling that these are criminal investigative files? Is that what the Court's ruling is?

R. 1410. The court's affirmative response is equally consistent with a ruling that UVA failed to prove its exemptions and with a ruling that the criminal-investigative-files exemption rendered those exemptions unnecessary to decide. From this exchange, we cannot determine with confidence whether the circuit court adjudicated UVA's asserted exemptions, declined to reach them because the criminal-investigative-files exemption was dispositive, or intended some narrower ruling. Nor can we determine whether any such ruling was based on factual findings tied to each of those exemptions and a record sufficient for appellate review.

"Whether an exemption applies is a 'mixed question of law and fact[.]'" *Commonwealth v. Sawyer*, 84 Va. App. 547, 566-67 (2025) (quoting *Hawkins v. Town of S. Hill*, 301 Va. 416, 424 (2022)). "This Court can review the applicability of a VFOIA exemption to documents only where the record is adequate to adjudicate this issue." *Id.* at 567. We cannot decide the applicability of an exemption "in a vacuum" without knowledge of the "precise nature" of the documents under review or give "an advisory opinion unsupported by any documentary record[.]" *Id.* (quoting *LeMond v. McElroy*, 239 Va. 515, 520 (1990)). Although the responsibility to provide an adequate appellate record generally rests with the appellant, remand may be appropriate where the circuit court's decision "effectively prevent[s] appellate review." *Id.* (quoting *Bland v. Va. State Univ.*, 272 Va. 198, 202-03 (2006)).

Here, both the ambiguity of the circuit court's ruling on UVA's asserted exemptions and the absence of clear factual findings tied to those exemptions effectively prevent informed

appellate review and require remand. This Court cannot make the missing factual determinations or determine the applicability of the specific exemptions in the first instance. As a court of review, "not first view," we do not place ourselves "in the shoes of a trial judge." *Reed v. Commonwealth*, 85 Va. App. 196, 216 (2025) (quoting *Commonwealth v. Holland*, 304 Va. 34, 38-39 (2025)). Where an appellate court cannot exercise informed judicial review because of an inadequate record, it may remand for further proceedings. *Wolfe v. Shulan Jiang*, 83 Va. App. 107, 117 n.2 (2025). "It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied." *Id.* (quoting *Jones v. Willard*, 224 Va. 602, 607 (1983)).

Applying those principles here, remand is necessary. The circuit court's ruling on the criminal-investigative-files exemption has been overtaken by later developments: the Commonwealth has withdrawn its objection, and UVA has released redacted reports. R. Add. 1-2. However, the record remains unclear as to whether the circuit court adjudicated UVA's other asserted exemptions and, if so, on what factual and legal basis. That ambiguity prevents us from determining whether any issues remain live and whether the circuit court made findings sufficient to permit meaningful review on BHM's "substantially prevail[ed]" argument.[3] It also prevents us from reviewing UVA's cross-assignments of error, determining whether the record is adequate to review the asserted exemptions, or assessing whether any exemption ruling affects BHM's claim that it substantially prevailed for purposes of Code § 2.2-3713(D). Because those unresolved questions bear directly on mootness and the substantial-prevailing analysis, we remand for the circuit court to address them in the first instance.

---

[3] Nothing in this opinion precludes the circuit court from considering mootness on remand if that issue is raised. Nor does this opinion require any particular result on mootness, attorney fees, or whether BHM "substantially prevail[ed]." We hold only that the present record does not permit this Court to resolve those issues in the first instance.

We therefore do not reach BHM's assignments of error or UVA's cross-assignments of error. We instead remand for the circuit court to clarify whether it ruled on UVA's asserted attorney-client, work-product, and scholastic-record exemptions. If the court did not reach those exemptions, or if further factual findings are necessary to permit appellate review,[4] the circuit court should determine the applicability of any remaining asserted exemptions in the first instance and develop an adequate record for appellate review. The court should also determine, in light of those rulings and any effect of UVA's later production of redacted reports and the Commonwealth's withdrawal of its objection, whether BHM substantially prevailed for purposes of Code § 2.2-3713(D) and whether attorney fees or costs are warranted.[5]

CONCLUSION

For these reasons, we neither affirm nor reverse the circuit court's judgment. Instead, we remand for clarification of the circuit court's rulings, and for any additional proceedings the court finds necessary, consistent with this opinion.

We express no opinion on whether any VFOIA exemption applies, whether BHM is entitled to further disclosure, whether any issue is moot on remand, whether BHM substantially prevailed, or whether attorney fees should be awarded.

*Remanded.*

---

[4] If the circuit court concludes that the existing record is insufficient to decide any remaining asserted exemptions or the attorney fees issue, it may, in its discretion, reopen the evidence or conduct any further proceedings it deems necessary.

[5] The scope of proceedings on remand is for the circuit court to determine in the first instance, consistent with this opinion.